# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THE HOTEL EMPLOYEES AND RESTAURANT EMPLOYEES INTERNATIONAL UNION WELFARE FUND, | Case No. 07 C 0916 |
| Plaintiff, | Judge Virginia M. Kendall |
| v. | |
| SAV-RX, A&A DRUG CO., and THE UNION LABOR LIFE INSURANCE CO., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Hotel Employees and Restaurant Employees International Union Welfare Fund ("Plaintiff" or "Fund") is a multi-employer Taft-Hartley trust fund established to provide healthcare and other benefits for collectively bargained employees working in the hospitality industry. (Compl., ¶ 2). Defendant Sav-Rx is a pharmacy benefit manager which organizes and operates prescription drug benefit management services for use by insurers, administrators and benefit plans. (Compl., ¶ 4). Defendant A&A Drug Co. is the parent corporation of Sav-Rx. (Compl., ¶ 1). Defendant Union Labor Life Insurance Co. ("ULLICO") is a provider of multi-line insurance, financial services and administrative products, including pharmacy benefit management services. (Compl., ¶¶ 6, 10-12). The Fund entered into a contract with Defendants in 1998 to provide the Fund with pharmacy benefits. (Compl., ¶¶ 10-14). The Fund alleges that Sav-Rx engaged in improper billing practices by which Sav-Rx increased the price of prescription drugs billed to the Fund. (Compl., ¶¶ 46-50). ULLICO failed to properly monitor Sav-Rx and prevent this fraud. (Compl. ¶ 1.)

The Fund filed this action against Sav-Rx and A&A Drug, alleging common law fraud;

violation of the Consumer Fraud and Deceptive Business Practices Act; negligent misrepresentation; and unjust enrichment. The Fund's claims against ULLICO are brought under theories of negligent misrepresentation and breach of contract. Sav-Rx and A&A now move to dismiss the Fund's negligent misrepresentation claim under Rule 12(b)(6) for failure to state a claim. ULLICO moves to dismiss the Fund's negligent misrepresentation and breach of contract claims against it. Because Plaintiff has alleged facts from which it could prove that Defendants provided information that guided Plaintiff in its transactions with third parties, Plaintiff's negligent misrepresentation claim may fit within an exception to *Moorman* doctrine's general bar on recovery of purely economic damages. Additionally, Plaintiff's allegations are sufficient to put ULLICO on notice of the grounds for the breach of contract claim against it.

**Plaintiff's Allegations**

From August 1998 through May 2006, ULLICO and Sav-Rx managed prescription drug benefits for the Fund's participants. (Compl., ¶ 30). Under the prescription drug plan, participants could arrange to fill a prescription at any participating pharmacy in Sav-Rx's pharmacy network. (Compl., ¶ 31). The participating pharmacy collects the co-payment from the participants and submits a claim for reimbursement to Sav-Rx for any excess owed. (Compl., ¶¶ 34-36). Sav-Rx reimburses the participating pharmacy for the covered medications. (Compl., ¶ 39). Sav-Rx in turn bills ULLICO for the reimbursements it paid to the participating pharmacies. (Compl., ¶ 40). ULLICO reviews the bill for compliance with the parties' agreements then forwards the bill to the Fund for payment of Sav-Rx's claim. (Compl., ¶ 41). Sav-Rx routinely submitted bills that misrepresented the actual product dispensed by the pharmacy. (Compl., ¶¶ 42-56). Specifically, Sav-Rx edited the National Drug Code information on its claims to represent a different, more

2

expensive manufacturer ("Phantom NDC") and to represent a more expensive package size ("Phantom Package Size").  (Compl., ¶ 50).

**Analysis**

A Rule 12(b)(6) motion to dismiss will be granted if it is beyond a doubt that the plaintiff is unable to prove any set of facts that would entitle her to relief.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The Court must accept the events as alleged in the complaint as true, and all ambiguities are construed in favor of the plaintiff.  *See Curtis v. Bembenek*, 48 F.3d 281, 283 (7th Cir 1995).

**I.    Negligent Misrepresentation Claims**

Illinois law, under the so-called *Moorman* doctrine, generally prohibits a plaintiff from recovering purely economic damages – damages not based on personal injury or property damage – in tort.  *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 450-51 (Ill. 1982); *In re Chicago Flood Litigation*, 680 N.E.2d 265, 275 (Ill. 1997).  Under the doctrine, economic claims for misrepresentation may be brought in only two circumstances: (1) if the defendant was in the business of supplying information for the guidance of others in their business transactions, or (2) if the misrepresentation was intentional.  *See Moorman*, 435 N.E.2d at 451-52.  Defendant argues that Plaintiff's negligent misrepresentation claim should be dismissed because Plaintiff seeks purely economic damages and neither of the above exceptions to the *Moorman* doctrine apply.  Plaintiff does not dispute that it seeks economic damages.  Additionally, the second exception to the *Moorman* doctrine for claims of *intentional* misrepresentation does not apply because Plaintiff alleges negligent misrepresentation.  The relevant question is thus whether Defendants supplied Plaintiff with information for guidance in its business transactions.  *See First Midwest Bank N.A. v.*

*Stewart Title & Guar. Co.*, 843 N.E.2d 327, 335 (Ill. 2006).

A court must make a case-specific analysis to determine whether the defendant was in the business of supplying information. *See Rankow v. First Chicago Corp.*, 870 F.2d 356, 361 (7th Cir. 1989) ("Whether a bank can be held liable for negligent misrepresentation depends upon the nature of the information at issue in a particular case and its relation to the kind of business being conducted."). There are three separate categories of businesses that supply information: (1) businesses that supply only non-informational goods or services where any information supplied is incidental to the sale of the product; (2) businesses that supply information as well as non-informational goods or services; and (3) businesses that provide a product which solely consists of information. *See General Elec. Capital Corp. v. Equifax Svcs., Inc.*, 797 F. Supp. 1432, 1442-1443 (N.D. Ill. 1992). The *Moorman* doctrine bars negligent misrepresentation claims against the first category of businesses, while the third category of businesses gets no protection. *See Rankow*, 870 F.2d at 364 ("Between these two extremes lie the more difficult cases, involving defendants whose business it is to provide both tangible goods (or other non-informational goods or services) *and* information."). As to the middle category of businesses, a plaintiff's claim is excepted from *Moorman*'s economic loss rule when the information furnished was "an important part of the product it offered" and used by a plaintiff to guide it in its transactions with third parties. *Id.* at 365; *see also Gerdes v. John Hancock Mut. Life Ins. Co.*, 712 F. Supp. 692, 698 (N.D. Ill. 1989).

In *Rankow*, the plaintiffs participated in a Dividend Reinvestment and Stock Purchase Plan (the "Plan") with the defendant bank. *See Rankow*, 870 F.2d at 357. In conjunction with this plan, the defendant provided the plaintiffs with information about pricing dates. *See id.* at 363. Plaintiffs relied upon this information in making their short sales in the market. *See id.* The Court found that

the information on pricing dates was an important part of the bank's financial services product. *See id.* Also, when the defendant signed its Plan it knew that the plaintiffs would use the information to guide their business transactions with third parties. *See id.* Accordingly, the bank was in the business of supplying information. *See id.*

Defendants argue that they fall in the first category of businesses because they are in the business of supplying pharmacy benefits, and not supplying information for the guidance of the Fund. Any information provided by Defendants, they contend, was merely ancillary to their primary functions of providing and maintaining a pharmacy network, administering prescription drug benefits, and providing fund members with access to a mail order pharmacy service. *See Credit General Ins. Co. v. Midwest Indem. Corp.*, 916 F. Supp. 766, 773 (N.D. Ill. 1996) ("In light of *Moorman,* the focus in such litigation becomes whether one is in the business of supplying information for the guidance of others or whether the information supplied was merely ancillary to or connected to the sale of merchandise or another matter."). Plaintiff counters that administering these benefits included Defendants' duties to collect, process and verify information regarding drug claims. Specifically, Plaintiff points to Sav-Rx's Pharmaceutical Services Agreement which requires Sav-Rx to provide monthly summary reports, paid claims data, and drug utilization reports. (PSA, at 3, 6-8, 21-23). As to ULLICO, its Pharmacy Benefits Management Agreement requires it to provide "[c]laims administration processing and information management" and "[a]dvice regarding benefit design and cost controls." (PBM, § 2(A)(1)).

In *Credit General*, the defendant was in the business of administering and adjusting claims on surety bonds, a business that required the defendant to collect, analyze and provide information to insurers. *See Credit General*, 916 F. Supp. at 773. The court held that the defendant was "easily"

5

in the business of supplying information because its services impacted the plaintiff insurer's ultimate decision whether to pay out the claim. *See id*. A similar relationship existed between the Fund, Sav-Rx, ULLICO and the participating pharmacies. The Fund allegedly made payments for prescriptions that its members received through the participating pharmacies in reliance on information that Sav-Rx and ULLICO provided in their roles as managers of the Fund's pharmacy benefits plan. Based on the facts alleged and the reasonable inferences taken therefrom, it is not beyond doubt that Defendants provided information that was important to their business of managing the Fund's pharmacy benefits and such information guided Plaintiff in its transactions with a third party. *See Rankow*, 870 F.2d at 359 n.3 (describing the inquiry as a factual one "that [] requires a more thorough examination of the facts than can be performed on the pleadings alone"). At the motion to dismiss stage, a federal court should not further weigh Plaintiff's evidence or evaluate the merits of its claim. *Compare Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995) (stating that it "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support its claims") *with First Midwest Bank*, 843 N.E.2d at 335 ("The allegation that a defendant is in the business of providing information for the guidance of others is a legal conclusion that must be supported by well-pled factual allegations").

## II. Breach of Contract Claim

ULLICO argues that Plaintiff has not adequately plead its breach of contract claim because: (1) the claim fails to identify the contractual duty that was breached; (2) the claim fails to identify any factual basis demonstrating that ULLICO breach such a duty, if one existed; and (3) the claim is belied by the attached agreements and the factual averments. Plaintiff alleges that its PBM Agreement with ULLICO was a valid and enforceable contract, (Compl. ¶ 89), and that it

substantially performed all contractual conditions required of it under the PBM Agreement, (Compl. ¶ 90). Plaintiff further alleges that ULLICO breached the contract by failing to provide the pharmacy benefit management services called for in the PBM Agreement and by failing to monitor and investigate the billing activities of Sav-Rx. (Compl. ¶ 91a-f). ULLICO therefore has notice of the manner in which it allegedly breach its contract with the Fund. Judged under the federal notice pleading standards, Plaintiff has alleged facts sufficient to establish a claim for breach of contract. *See Telewizja Polska USA, Inc. v. EchoStar Satellite Corp.*, 69 Fed. Appx. 793, 796, 2003 WL 21579968, *3 (7th Cir. 2003) (plaintiff met federal notice pleading requirements for breach of contract claim by putting defendant on notice of the grounds for its claim), citing *Lewis v. Local Union No. 100 of the Laborers' Int'l Union of N. America, AFL-CIO*, 750 F.2d 1368, 1373 (7th Cir. 1984); *Petri v. Gatlin*, 997 F. Supp. 956, 965-66 (N.D. Ill. 1997) (federal rules require only allegations of formation, performance and breach).

**Conclusion and Order**

Plaintiff's allegations and the reasonable inferences therefrom state a claim for negligent misrepresentation and breach of contract. Wherefore, Sav-Rx's' and A&A Drug's Motion to Dismiss Count III of Plaintiff's Complaint is denied and ULLICO's Motion to Dismiss Counts IV and V is denied.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: May 10, 2007